UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| TERRY WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0: 21-085-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LOWE'S HOME CENTERS, LLC, et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

While shopping at the Lowe's store in Morehead, Kentucky, Plaintiff Terry Warren alleges that he picked up a box containing a fluorescent light bulb, the bulb fell from its box and shattered on the floor. He contends that some of the glass particles injured his eyes and the roof of his mouth. Warren filed suit against Defendants Lowe's Home Centers, LLC ("Lowe's") and Savant Technologies LLC ("Savant"). Both defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Record Nos. 61, 62] The motions will be granted for the reasons that follow.

I.

Warren alleges that asserts that he was injured while shopping at the Lowe's store in Morehead, Kentucky on September 22, 2020. Specifically, he claims that he picked up a box containing a fluorescent lightbulb and that "the light bulb fell from the box and burst onto the

- 1 -

floor."[1] [Record No. 1-1, ¶ 11] Warren contends that "the shards of glass and contents of said bulb became embedded within [his] eyes," [*Id.* ¶ 12], and that shattered glass particles inhaled by Warren "became lodged within [his] mouth, esophagus, throat, and person causing serious physical injury," [*Id.* ¶ 13].

Warren filed suit in the Rowan Circuit Court nearly one year after the incident. [*See id.*] And after determining that the plaintiff was seeking damages in excess of $75,000, the defendants removed the case to this Court, invoking diversity jurisdiction. Discovery closed on November 18, 2023, and the instant motions for summary judgment were filed on November 28, 2023. [Record Nos. 61, 62]

## II.

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute regarding any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once this showing is made, the burden shifts to the nonmovant. The nonmoving party may not simply rely on his pleadings but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). In other words, the nonmoving party must present "significant probative evidence that establishes more than some metaphysical doubt as to the material facts." *Golden v. Mirabile Invest. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citation and alteration omitted).

---

[1] Warren contradicted this allegation during his deposition, stating that the lightbulb did not break when it fell to the floor but when it struck a shelf and "broke right eye level." [Record No. 61-2, p. 15]

The Court affords all reasonable inferences and construes the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) Further, the Court may not weigh the evidence or make credibility determinations but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *see also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). And the existence of a scintilla of evidence favoring the nonmovant is not sufficient to avoid summary judgment. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 252).

**III.**

A common law negligence claim requires proof of: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citing *Pathways, Inc. v. Hammons,* 113 S.W.3d 85, 88–89 (Ky. 2003)). Warren's Complaint and subsequent filings clarify that his claims against Lowe's raise three theories of negligence.

First, he raises a premises liability claim. Warren asserts that Lowe's "knew or should have known that a dangerous condition existed on its premises that posed a threat or harm to members of the public and other invitees." [Record No. 1-1, ¶ 16] Second, he alleges that Lowe's failed to properly train and supervise its employees "regarding proper stocking,

storage, handling, inspecting, and stacking procedures when placing items on the sales floor." [*Id.* ¶ 30] Third, Warren brings a claim for liability under the doctrine of *respondeat superior*.

### A.

A negligence claim brought under a theory of premises liability begins by assuming that a property owner "has a general duty to maintain the premises in a reasonably safe manner; and the scope of that duty is outlined according to the status of the plaintiff." *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 909 n.28 (Ky. 2013); *see Bramlett v. Ryan*, 635 S.W.3d 831, 836 (Ky. 2021) ("At common law, the duty a property owner owed to an entrant to his or her property depended upon the classification of that entrant as a trespasser, licensee, or invitee."). "A customer of a store, when on that part of the premises where customers are expected to go, is an invitee." *Lyle v. Megerle*, 109 S.W.2d 598, 599 (Ky. 1937). With respect to invitees, Lowe's has a duty "to discover unreasonably dangerous conditions . . . and to either correct them or warn of them." *Ky. River Med. Center v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010). An unreasonably dangerous condition is "one that is 'recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized' or one that is 'in fact recognized as such by the particular defendant.'" *Shelton*, 413 S.W.3d at 914 (quoting Dan B. Dobbs et al., *The Law of Torts* § 143, p. 335 (2001)).

### 1.

The first issue to address is whether the display of fluorescent bulbs constituted an unreasonably dangerous condition. "It is generally a question of fact to be presented to the jury whether an unreasonably dangerous condition existed . . . sufficient to trigger the duty to warn or ameliorate." *City of Barbourville v. Hoskins*, 655 S.W.3d 137, 141 (Ky. 2022).

However, summary judgment may still be appropriate "[i]f reasonable minds cannot differ or it would be unreasonable for a jury to find breach or causation." *Shelton*, 413 S.W.3d at 916.

Here, the Court concludes that no reasonable person could conclude that the display of light bulbs constituted an "unreasonably dangerous condition." To support this determination, we need only review the plaintiff's deposition testimony. Warren testified that a Lowe's employee directed him to the area where the bulbs were being displayed, describing the location as "midways in that section of that out [sic] aisle, down on the floor." [Record No. 61-1, p. 2] He further described the displayed bulbs as being individually boxed and stacked up "[n]ice and neat." [*Id.* at 6, 8] Warren further testified that all the boxes looked the same, including the box in issue. [*Id.* at 10]

Neither Warren nor the Lowe's employee recognized the display as being unreasonably dangerous. After approaching the display, Warren proceeded to get down on one knee and began removing boxes from the stack in search of his desired size. [*Id.* at 7–8] Since Warren is the only witness to this alleged incident, the Court has only his testimony to consider. But even interpreted in a light most favorable to him, there is no evidence from which a jury could conclude that a reasonable person in similar circumstances would recognize the display as "a risk that should be avoided or minimized." *See Shelton*, 413 S.W.3d at 914. Because the display did not constitute an unreasonably dangerous condition, Lowe's had no duty to warn or ameliorate. *Hoskins*, 655 S.W.3d at 141. With respect to the light bulb display, Lowe's was only bound by its duty to maintain the premises in a reasonably safe manner.

**2.**

Warren has also not provided any evidence that would permit this Court or a jury to find that the display was anything other than reasonably safe. Warren's own deposition testimony undermines the claim that Lowe's or its staff should have been on notice that a potential hazard existed. After kneeling at the display, Warren provides two contradictory narratives describing what happened. Per his Complaint, "the light bulb fell from the box and burst onto the floor." [Record No. 1-1, ¶ 11] But during Warren's deposition, he testified that he was trying to set one of the boxes on a nearby shelf when the light bulb partially slid out of the box, struck the shelf, and "broke right eye level." [*Id.* at 15]

Regardless of which version is believed, neither represents a breach of the duty Lowe's owed to Warren and it would be unreasonable for a jury to find otherwise. Because Lowe's did not breach its duty, the Court need not explore the elements of injury or causation. Lowe is entitled to summary judgment as a matter of law regarding Warren's claim of premises liability.

## B.

Warren's claim against Lowe's for negligent training or supervision will be addressed alongside his claim based upon the doctrine of *respondeat superior*.[2] Both claims fail because they rely on an underlying finding for which there is no evidence. Warren alleges that Lowe's had a duty to train and supervise its employees "regarding proper stocking, storage, handling, inspecting, and stacking procedures when placing items on the sales floor." [Record No. 1-1,

---

[2] The Supreme Court of Kentucky has held "that a plaintiff may assert and pursue in the same action a claim against an employer based under *respondeat superior* upon the agent's negligence and a separate claim based upon the employer's own direct negligence in hiring, retention, supervision, or training." *MV Transp., Inc. v. Allgeier*, 433 S.W. 3d 324, 337 (Ky. 2014).

¶ 30] The burden is on Warren to demonstrate that the breach of that duty was the cause of his injuries. Implicit in this task is first proving that the display was stocked, stored, or inspected in such negligent fashion as to cause Warren's alleged injuries. But as noted above, Warren fails to offer any evidence that the light bulb display—rather than his own actions—was the cause of any injury. As a result, he is unable to demonstrate causation. His claim for negligent training, therefore, fails.

The same is true for Warren's claim brought under the doctrine of *respondeat superior*. Under this doctrine, an employer can be held vicariously liable for an employee's negligent actions if they were committed within the scope of the employee's employment. *See Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 50 (Ky. 2008) (citing *Patterson v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005)). It naturally follows that "if the agent did not act negligently, there can be no vicarious liability imputed to the principal." *Cohen v. Alliant Enterprises, Inc.*, 60 S.W.3d 536, 539 (Ky. 2001). But Warren has failed to provide any evidence that Lowe's employees acted negligently.

### IV.

The Court next turns to Warren's product liability claim against Savant. "[I]f a claim is brought against a seller or manufacturer of a product which is alleged to have caused injury, then the [Kentucky Product Liability Act ("KPLA")] applies, regardless of whether the action is founded on strict liability in tort, negligence or breach of warranty." *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997); *see also* KRS 411.300(1)[3]. The Supreme Court of Kentucky

---

[3] "As used in KRS 411.310 to 411.340, a 'product liability action' shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards,

has recognized three theories of product liability: (1) defective design, (2) defective manufacture, and (3) failure to warn. *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 250 (Ky. 1995), *overruled on other grounds by Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009). Warren bases his claim against Savant in negligence, alleging that it "knew or should have known that a dangerous condition existed regarding its product and/or packaging," (defective design) [Record No. 1-1, ¶ 22], "failed to maintain its product in a safe and reasonable manner," (defective manufacture) [*Id.* ¶ 23], and "failed to warn members of the public and others . . . about the dangerous condition that existed," (failure to warn) [*Id.* ¶ 24].

A.

A negligence claim alleging defective design turns on whether the manufacturer exercised the proper degree of care to protect against foreseeable dangers when manufacturing the product for the consumer. *Ostendorf v. Clark Equip. Co.,* 122 S.W.3d 530, 535 (Ky. 2003). Kentucky employs a risk-utility test in design defect cases that evaluates "whether an ordinarily prudent company engaged in the manufacture of [the product], being fully aware of the risk, would not have put it on the market." *Nichols v. Union Underwear Co., Inc.*, 602 S.W.2d 429, 433 (Ky. 1980); *see also* KRS 411.310(2)[4] (articulating a statutory presumption of non-defectiveness). "To prevail on a design-defect claim, a plaintiff must present proof of

---

preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product."

[4]   "In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured."

'an alternative safer design, practicable under the circumstances.'" *Primal Vantage Co., Inc. v. O'Bryan*, 677 S.W.3d 228, 248 (Ky. 2022) (quoting *Trent v. Ford Motor Corp.*, 2 F. Supp. 3d 1022, 1026 (W.D. Ky. 2014)).

### 1.

Savant highlights several instances in which this Court and others have held that expert testimony is required to prevail in a design defect claim. [Record No. 68, p. 3] It further notes that Warren has not retained an expert and that the deadline for doing so has passed. But Savant's assertion that an expert witness is required in this instance is incorrect.

The Court has noted that expert testimony is required where a "design defect claim turns on scientific or specialized knowledge 'which cannot be determined intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life.'" *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 681 (E.D. Ky. 2013) (quoting *Com., Dept. of Highways v. Robbins*, 421 S.W.2d 820, 824 (Ky. 1967)). The examples provided by Savant fit squarely within that category.[5] Expert testimony is required, however, "when the subject presented is so distinctly related to an area that is so far removed from the grasp of the average lay person." *Stevens v. Keller Ladders*, 1 F. App'x 452, 458 (6th Cir. 2001). The Court is unconvinced that the facts in this case *require* expert testimony. Accordingly, it would be improper to grant summary judgment on that basis alone.

---

[5] *Watson v. Ford Motor Co.*, No. 08-cv-508, 2009 WL 5064316 (E.D. Ky. Dec. 15, 2009) (requiring expert testimony to demonstrate that a vehicle and its restraint system were defective); *Honaker v. Innova, Inc.*, 04-cv-132, 2007 WL 1217744 (W.D. Ky. Apr. 23, 2007) (finding that the safety and engineering aspects of pressure cookers are not within the knowledge of an ordinary person); *Burton v. Ethicon, Inc.*, 20-cv-280, 2021 WL 1725514 (E.D. Ky. Apr. 20, 2021) (requiring expert proof of design alternatives to a medical transvaginal mesh product).

## 2.

Although expert testimony may not be required, "design defect liability requires *proof* of a feasible alternative design." *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004) (emphasis added). "Except where the defect is obvious (as when a Coke bottle explodes), the plaintiff must usually show that some alternative way of manufacture or design was both safer and feasible." *Ford Motor Co. v. Fulkerson*, 812 S.W.2d 119, 126 (Ky. 1991) (quoting Richard O. Lempert & Stephen A. Saltzburg, *A Modern Approach to Evidence*, 187–89 (1st ed. 1977)). It is insufficient to show that it was "theoretically probable that a different design would have been feasible." *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 463 (6th Cir. 2022) (quoting *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 224 (6th Cir. 1996)).

Warren has failed to clear this relatively low bar. In response to Savant's motion, Warren filed a response that did not contain a single citation to statutory or case law. [Record No. 66] He provides no alternative light bulb design that would have prevented the alleged breakage, instead focusing on the packaging. The extent of Warren's "proof" of a box alternative is an illustrative paragraph that leads with the claim that "[m]ost light bulbs on the market now are fully encased in packaging that surrounds all sides . . . ." [*Id.*] Warren then goes on to "calculate" that the cost of more robust packaging would be approximately ".089 cents per package"—a conclusion he reaches with the aid of www.boxforless.com.

While the Court again notes that expert testimony is not required in this matter, Warren would have surely benefitted from it. Instead, the evidence being offered is inadequate for presentation to a jury, as it would require jurors to reach a verdict based entirely on speculation.

In summary, because Warren has presented no proof of alternative safer designs for the light bulb or its packaging, his allegation of design defect fails.

**B.**

"Under Kentucky law, a manufacturing defect exists in a product when it leaves the hands of the manufacturer in a defective condition because it was not manufactured or assembled in accordance with its specifications." *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 788 (6th Cir. 2005). The plaintiff has the burden of proving that any manufacturing defect was a substantial factor in bringing about the alleged injuries. *See id.* As one might imagine, the most useful evidence of manufacturing defect in this case would be the light bulb and box in which it was housed. But Warren has neither.

Warren testified that he discovered "a piece of glass sticking in the roof of [his] mouth" approximately four days after the incident and that it was "about half the size of [his] little fingernail". [Record No. 62-3, p. 16] His brother testified that he removed the piece of glass with a pair of tweezers and that the extracted glass was thrown away. [Record No. 62-4, p. 3] Warren argues in his response that the glass is not needed because he "can make Defendant Lowe's employees testify as to statements made to them by Plaintiff, incident reports taken, camera footage, etc." [Record No. 66] But that ship has sailed. Warren took no depositions and discovery has closed.

Warren also failed to retain the box in which the light bulb was contained, leaving the Court or jury with little more than his less-than-certain testimony. While Warren testified that he did not see any tabs[6] on the box, [Record No. 62-3, p. 10], he also indicated multiple times

---

[6] The design of the box relies, in part, on tabs that help secure the light bulb in place.

- 11 -

that the boxes in the display all looked the same, [Record No. 61-2, p. 10]. Warren's only evidence seems to be his own testimony, which is replete with contradiction. Warren alleges in his Complaint that "the light bulb fell from the box and burst onto the floor." [Record No. 1-1, ¶ 11] Later, he testified that the light bulb may have only partially slid out of the box, struck a shelf, and "broke right eye level." [*Id.* at 15] Based upon Warren's lack of proof, it would be unreasonable for a jury to conclude that a manufacturing defect existed, let alone that it was a substantial factor in bringing about his alleged injuries.[7]

## C.

A manufacturer is only liable under the failure-to-warn theory of product liability "if it knew or should have known of the inherent dangerousness of the product and failed to 'accompany . . . it with the quantum of warning which would be calculated to adequately guard against the inherent danger.'" *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 79 (Ky. 2010) (quoting *Post v. Am. Cleaning Equip. Corp.*, 437 S.W.2d 516, 520 (Ky. 1968)). Additionally, the plaintiff must show that the failure to warn was the proximate cause of the plaintiff's alleged injuries. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 507 (6th Cir. 1998) (citing *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 537 (6th Cir. 1995)).

Warren has not demonstrated that either the bulb or the box presented any inherent dangerousness. An affidavit from Savant's then-Lead Product Service Engineer reports that,

---

[7] Though not discussed herein, Warren has an extensive history of oronasal health issues for which he has undergone invasive oral surgery. [*See* Record Nos. 62-1, p. 3; 62-3, p. 5] Even if the Court were to find either defendant responsible for a breach of duty, Warren has not retained an expert witness necessary to show that the alleged harm resulted from the incident at Lowe's, rather than the past medical procedures targeting the exact same area.

since January 2018, "Savant has shipped over three million units of circline light bulb products, including over 200,000 units of this exact SKU." [Record No. 62-8, p. 3] He further notes that aside from Warren's allegation, "Savant has received no reports of personal injury or property damage related to these circulene light bulb products whatsoever." [*Id.*]

Warren has provided no evidence to support the contention that the product was inherently dangerous, or that Savant knew or should have known about it. Savant is entitled to summary judgment as a matter of law because Warren has failed to preserve or present any evidence of alleged negligence.

V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Defendant Lowe's Home Centers, LLC's Motion for Summary Judgment [Record No. 61] is **GRANTED**.

2. Defendant Savant Technologies LLC's Motion for Summary Judgment [Record No. 62] is **GRANTED**.

3. Defendant Lowe's Home Centers, LLC's Motion to Exclude [Record No. 60] is **DENIED**, as moot.

Dated: February 5, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky